Filed 6/17/14  In re Damian W. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re DAMIAN W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAMIAN W.,<br><br>Defendant and Appellant. | A140062<br><br>(San Francisco County<br>Super. Ct. No. JW13-6122) |

**INTRODUCTION**

Minor Damian W. appeals from jurisdictional and dispositional orders of the juvenile court sustaining allegations of first degree robbery with personal infliction of great bodily injury and felony assault by means of force likely to cause great bodily injury, declaring him a ward of the court, and committing him to a youth ranch facility. (Pen. Code, §§ 212.5, subd. (a), 12022.7, 245, subd. (a)(4).)[1]  Appellate counsel has raised no issues and asks this court for an independent review of the record to determine whether there are any issues that, if resolved favorably to the minor, would result in reversal or modification of the judgment.[2]  (*People v. Kelly* (2006) 40 Cal.4th 106; *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Counsel notified the minor of his right

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Appellant has also filed a habeas corpus petition in appellate case number A141303. Because we conclude the petition states a prima facie case for relief, we have issued an Order to Show Cause returnable in superior court by separate order.

1

to file a supplemental brief, but the minor has not filed one. Upon independent review of the record, we conclude no arguable issues are presented for review, and affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 30, 2013, at approximately 6:00 p.m. Nathan T. was riding a Muni bus in San Francisco. A group of 10 or 15 people ran beside the bus, boarded it at the same time, and sat down in the same area of the bus. Someone grabbed Nathan's iPhone. When he tried to get his phone back, someone punched him in the face with a fist. A group of people continued to hit and punch Nathan. He was pushed to the ground and kicked. The bus driver stopped the bus and his assailants left through the rear door. The last person to leave snatched Nathan's wallet out of his back pocket and kicked him in the face when he tried to get it back. The entire episode was captured on the bus's video surveillance camera.

Nathan was taken by ambulance to San Francisco General Hospital where he stayed five hours. He suffered gashes under his eye and on his forehead that required suturing; swelling to his left eye; and bruises to his back and shoulder. On a scale of 1 to 10, his pain at the hospital was a 10, and it continued at that level the next day. Nathan's injuries did not disrupt his activities the next day (because it was a Saturday) or cause him to miss work. Nathan took a photograph of himself approximately 14 hours after the attack. Nathan was not able to identify the minor's role in the attack.

San Francisco Police Officer Richard Wise went to the location of the bus attack at 23rd and Dakota Streets to investigate the robbery. Later than evening he viewed the Muni video. Several hours after the attack, Officer Wise saw an individual at 78 Dakota Street, approximately half a block from 23rd Street, wearing a camouflage baseball cap backwards and camouflage pants that were similar to the clothing worn by one of the suspects in the video. The officer took a photograph of him.

The next day, two of the suspects, minors Damian W. and Michael F., were interviewed by Sergeant Michael Young. Damian W. admitted to Young that he was part of a group of youths on the bus the previous day and was wearing a camouflage hat and matching camouflage pants. He also admitted taking the victim's wallet, stating "he put his foot out and then put it back . . . but he didn't necessarily kick the victim."

Separate wardship petitions (Welf. & Inst. Code, § 602, subd. (a)) were filed by the San Francisco District Attorney alleging Damian W. and Michael F. had committed first degree robbery and personally inflicted great bodily injury in its commission. (§§ 212.5, subd. (a), 12022.7, subd. (a).) Damian was additionally charged with assault by means of force likely to produce great bodily injury, with personal infliction of great bodily injury the commission of the assault, a felony. (§§ 245, subd. (a)(4), 12022.7, subd. (a).)

At a pretrial conference, the district attorney conveyed a plea offer to the minor's trial counsel: if the minor admitted the robbery, the district attorney would dismiss the remaining assault charge and both great bodily injury allegations. At a second pretrial conference, a jurisdictional hearing was confirmed.

A single jurisdictional hearing was held as to both minors on September 20 and 23, 2013, at which the victim and the two police officers testified. In addition, the video of the offense, photographs of the victim's injuries, and the victim's medical records were admitted into evidence. The video shows the minor, Damian W., sitting behind the victim in camouflage clothing. It also shows him getting up from his seat and hitting the victim after the phone snatch, and taking the victim's wallet and then kicking him in the head, knocking him over. Defense counsel argued the great bodily injury allegation attached to the assault count was not proven beyond a reasonable doubt. At the conclusion of the hearing, the trial court found true the charges and great bodily injury allegations faced by each minor.

At the disposition hearing on October 7, 2013, the court granted trial counsel's motion to strike the great bodily injury finding attached to the felony assault count, in the interest of justice pursuant to section 1385, over the prosecutor's objection. The court also accepted the minor's admission to a misdemeanor petty theft alleged in an earlier petition for which he had been granted deferred entry of judgment and informal probation. The court placed the minor on probation in the custody of the probation department and committed him to the Log Cabin Ranch School. The court determined section 654 did not bar multiple punishment for the robbery and the assault and advised the minor his maximum confinement time was 10 years two months.

On October 15, 2013, trial counsel filed a motion to reduce the felony assault to a misdemeanor pursuant to section 17, subdivision (b), nunc pro tunc, backdated to October 7, 2013. In the written motion, and at the hearing on the motion held October 17, 2013, trial counsel argued that at the time of the disposition hearing, the court and the parties believed striking the great bodily injury finding attached to the felony assault count would have the effect of precluding the use of that felony assault as a strike in any future case. However, the prosecutor subsequently informed trial counsel of case law holding that striking a great bodily injury enhancement at sentencing does not change the nature of the conviction, i.e., the trial finding of assault by means of force likely to produce great bodily injury, when accompanied by a great bodily injury finding, remains a strike for future purposes, even if the court strikes the great bodily injury finding in the interest of justice at sentencing. (*People v. Shirley* (1993) 18 Cal.App.4th 40, 46-48 ["defendant had previously been convicted of a serious felony when he pled guilty to aggravated assault under section 245 and admitted the great bodily injury enhancement under section 12022.7 and that status was not changed for purposes of subsequent proceedings when the court struck the enhancement for sentencing purposes in the earlier case"]; *People v. Milosavljevic* (1997) 56 Cal.App.4th 811, 816 [same with respect to stayed enhancement].)

4

Counsel also argued he was ineffective for failing to make the motion for reduction to a misdemeanor in open court at the disposition hearing on October 7. "I actually did [make the motion] in chambers . . . [. M]y original request was to 17B the matter and we proposed doing this alternative. And at that time . . . everyone in this courtroom believed that the alternative striking the great bodily injury allegation would have had the effect of leaving my client with one strike as opposed to two. [¶] We basically all were under a mistaken impression. Obviously my fault is the greatest because I'm the one representing my client. I certainly should have accurately known the state of the law to begin with. If I didn't, I should have requested a continuance to do that. I didn't do either of those things. Therefore, I think it's very clear that I was ineffective in representing my client."

The prosecutor opposed the motion. However, at the hearing, the prosecutor agreed the People did not intend the minor to have two strikes and, to that end, an offer had been conveyed to minor's counsel, "to plead to count one the robbery . . . . [¶] We would dismiss the balance." He explained, "An offer was conveyed. An offer rejected. The case proceeded." The prosecutor argued it was too late for the court "to go back on its findings." Trial counsel argued: "I'm not saying that I'm not responsible for bringing my own client to trial. But . . . even if I was telling my client you . . . got to plead to the strike, it would have been all for naught because this was a codefendant case where the codefendant proceeded to trial. These cases are not severed. And we would have been exactly where we were irrespective of whether or not my client wanted to accept the felony robbery." The prosecutor disagreed. "We sever cases all the time. And if defense counsel indicated he wanted to accept the offer, that would have been further discussion. Our office severs cases all the time."

On October 17, 2013, the trial court denied the motion to reduce the assault to a misdemeanor as not appropriate because "[i]t was a very serious case which involved a robbery and an assault by a group of youth upon a defenseless victim." The court also

expressed doubts that reducing the assault finding to a misdemeanor would eliminate the second strike. However, the court stated: "I do hope that the great bodily injury allegation that I struck at the disposition hearing on October 7th will have the intended effect of removing the second strike. That was the Court's intention." The court granted defense counsel's motion to be relieved as counsel after minor's family had retained new counsel. Trial counsel admitted he had made a "mess" of the minor's case. The minor timely appeals.

## DISCUSSION

On March 19, 2014, appointed counsel filed a *Wende* brief in this court. The minor has not filed a supplemental brief. Pursuant to *People v. Wende* (1979) 25 Cal.3d 436, we have reviewed the entire record on appeal. The jurisdictional findings are supported by substantial evidence. The court did not abuse its discretion in committing the minor to the boys' ranch, setting the maximum term, or denying the motion to reduce the felony assault to a misdemeanor pursuant to section 17, subdivision (b). The appellate record does not shed sufficient light on counsel's tactical choices to evaluate the merits of a constitutional challenge to the effectiveness of his pretrial advice to the minor. That issue is more appropriately addressed in a habeas proceeding. (*People v. Mendoza-Tello* (1997) 15 Cal.4th 264.) We conclude there is no arguable issue on appeal. (*People v. Kelly*, *supra*, 40 Cal.4th at p. 124.)

## DISPOSITION

The juvenile court's orders and judgment are affirmed.

6

_____

Dondero, J.

We concur:

_____

Margulies, Acting P.J.

_____

Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.